41 C.C.P.A.(Patents)

## Application of NOXON.
### Patent Appeals No. 5998.

United States Court of Customs and Patent Appeals.

Feb. 3, 1954.

Rehearing Denied March 23, 1954.

C. J. Kalman, Bendix, N. J. (Emory C. Naylor, Washington, D. C., and Sylvester H. Hartz, Teterboro, N. J., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

COLE, Judge.

The Primary Examiner and Board of Appeals of the United States Patent Office, in respective opinions concurring in all material respects, have rejected claims 1 through 5 and 7 through 9 of the appellant's patent application for "Trim Provision for Automatic Pilot." This

appeal challenges the correctness of the board's decision.

The complex apparatus set forth in the description of the specification relates broadly to an aircraft positioning system, and more particularly the claimed invention is directed to an automatic pilot which is said to embody novel pitch and bank trim provisions for trimming aircraft control surfaces, i. e., elevator and aileron surfaces, during flight operation. As a general summarization of the character of the claimed invention, the following from the brief of the appellant (reference numerals omitted) is conceded by the Solicitor for the Patent Office to be an accurate description:

"The invention is directed to an automatic pilot for aircraft to maintain the craft in a predetermined attitude. * * * a transmitter has its rotor stabilized by a vertical gyroscope and its stator fixed to the craft. The transmitter provides signals corresponding to the departure of the craft from the predetermined attitude [signals proportional to craft angles of bank and pitch are determined by gyroscope]. A repeater having a rotor and a stator is connected to the transmitter and repeats the signal. The repeater is connected to an amplifier whose output is applied through an adapter to a reversible two-phase induction motor drivably connected through gearing to a control surface of the craft. The motor operates in response to the signal from the transmitter to maintain the craft in the predetermined attitude. Stator of transmitter is drivably connected through gearing to a manually operated knob so that stator may be moved angularly relative to rotor to alter the attitude of the craft independently of the transmitter."

Further description in this regard is found in the following from the opinion of the Board of Appeals:

" * * * this automatic control mechanism includes a system for controlling the pitch and also a system for controlling the bank of an aircraft. The pitch is controlled through ailerons moved by a servo motor governed by a Selsyn system which is in turn actuated primarily by a gyroscope which also furnishes an artificial horizon. This system includes a manual adjustment of the motor follower of the Selsyn system so that the pitch may be altered independently of the gyro controlled channel. A similar system operates the elevators and includes a manual adjustment operated by a trimmer knob."

Claim 4 of the application in issue is representative and reads:

"4. In a control system for a dirigible craft, first and second electrical signal generators each having a stator and a rotor element, means for rotating said craft about an axis thereof including control means therefor responsive to the signal outputs of said generators, gyroscopically controlled means for positioning one of the elements of a first of said generators, the other element of said first generator being movable with said craft, and manually adjustable means for effecting relative movement of the elements of the other generator to alter the attitude of the craft."

The appealed claims were rejected by the Patent Office on the basis of the following prior art references: Van Auken et al. 2,410,468 Nov. 5, 1946 (filed Apr. 9, 1941); Kellogg 2d., et al. 2,415,-429 Feb. 11, 1947 (filed Feb. 13, 1942); Frische et al. 2,415,430 Feb. 11, 1947 (filed July 28, 1942).

It will be readily observed from the foregoing that this case is typical of the well recognized sphere of technical legal jurisprudence, especially patent law, where the courts have freely applied great weight, often controlling of its decisions, to the observations and conclusions made to the record by the capable personnel associated with the controversy in the tribunals below. We pre-

fer to follow that course, to some extent, in disposing of this highly technical case.

It is quite apparent from the record that the application in issue has been subjected to lengthy review and tedious appraisal in the course of its consideration by the Patent Office. Initially, a final rejection was made out in which claims 1, 2, 3, 7, 8, and 9 were rejected on Frische et al.; claims 1, 2, 3, 4, 5, 7, 8, and 9 were held unpatentable over Kellogg et al.; and claims 1, 2, 4, 5, 7, 8, and 9 were rejected on Van Auken et al. Subsequent to this final rejection, the appellant offered to enter an affidavit with accompanying exhibits under Rule 131 of the Rules of Practice of the United States Patent Office, 35 U.S.C.A.Appendix,[1] which allegedly antedated all of the prior art references. The examiner, authorized to act thereon, modified his previous ruling by removing the Frische and Kellogg references as to claims 1, 5, 7, 8, and 9, but the affidavit was not recognized as sufficient to overcome Van Auken in any respect or Kellogg and Frische as to claims 2, 3, and 4.

Specifically, the appellant sought to prove by the affidavit that over a year prior to the filing date of the earliest reference of record, i. e., Van Auken filed April, 1941, an electro-mechanical schematic drawing of the directional channel of an automatic pilot system was completed (February 13, 1940) which embodied the claimed invention (Exhibits Aa and Ab). Shortly thereafter, the claimed invention was allegedly disclosed in operative form to an acknowledging witness, and on February 19, 1940, a listing of component parts was made (Exhibits Ba and Bb). The affidavit further avers that the appellant's assignee took immediate and diligent steps toward developing and completing the claimed invention as evidenced by numerous exhibits indicating the commencement of activity supposedly directed thereto. As the project was nearing completion in August of 1941, two drawings (Exhibits H and I) were made allegedly showing all elements of the claimed invention and, in this regard, Exhibit I is said to incorporate the elements of the drawings of Exhibits Aa and Ab. The affidavit concludes with an averment concerning the successful flight testing of the invention in December of 1941. The appellant maintains that the affidavit "establishes conception of the invention prior to the filing dates of the Van Auken, Frische and Kellogg patents coupled with due diligence from the dates to a subsequent reduction to practice" as required by Rule 131, supra.

The basic issue thus presented for our consideration is whether the affidavit is sufficient to show conception of the subject matter of the appealed claims. In affirming the examiner, the Board of Appeals sustained the rejection of claims 1, 2, 4, 5, 7, 8, and 9 on Van Auken, claims 2, 3, and 4 on Kellogg, and claims 2 and 3 on Frische. In its opinion, the board made it clear that it did not satisfactorily appear that the two principal exhibits relied upon by the appellant, i. e., Exhibits Aa and I, disclosed certain essential limitations expressed in the claims on appeal.

[1] "1.131 Affidavit of prior invention to overcome cited patent or publication. (a) When any claim of an application is rejected on reference to a domestic patent which substantially shows or describes but does not claim the rejected invention, or on reference to a foreign patent or to a printed publication, and the applicant shall make .oath to facts showing a completion of the invention in this country before the filing date of the application on which the domestic patent issued, or before the date of the foreign patent, or before the date of the printed publication, then the patent or publication cited shall not bar the grant of a patent to the applicant, unless the date of such patent or printed publication be more than one year prior to the date on which the application was filed in this country.

"(b) The showing of facts shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from said date to a subsequent reduction to practice or to the filing of the application. * * *"

The sufficiency of the Frische and Kellogg disclosures as to subject matter is not disputed by the appellant, it appearing that the appellant is placing full reliance on the affidavit to overcome the rejections based on these references. While the appellant, in his reasons of appeal, challenged the Van Auken reference as failing to set forth the subject matter of the appealed claims, no argument in this respect is found in his brief and consequently the substance of Van Auken as a proper reference is presumed to be conceded. In re Lobdell, 167 F.2d 634, 35 C.C.P.A., Patents, 1091. The appellant, therefore, stakes his case on the affidavit filed in accordance with Rule 131, supra.

Exhibit Aa is of critical significance to the claims rejected on Van Auken. In his brief, the appellant states:

"Exhibit Aa shows an automatic pilot for maintaining a craft on a predetermined course * * * a gyro stabilized 'Fluxgate' compass is connected back to back with the stator windings of a coupling 'Autosyn' C. The rotor windings of coupling 'Autosyn' C are connected to the input of a 'Fluxgate' amplifier, and the amplified error signal between the 'Fluxgate' and the 'Autosyn' controls operation of an induction motor drivably connected through gearing to a loop antenna and to the rotor of coupling 'Autosyn' C. The induction motor operates until the coupling 'Autosyn' C is driven to null position relative to the 'Fluxgate.'

"The rotor of a transmitter 'Autosyn' B is mounted on the same shaft as the rotor of coupling 'Autosyn' C and is driven by the induction motor. Transmitter 'Autosyn' B provides in its stator windings signals corresponding to the departure of the craft from a predetermined course. The stator windings of a magnetic course setting 'Autosyn' are connected back to back to the stator windings of transmitter 'Autosyn' B and the rotor of the magnetic course setting 'Autosyn' is connected through a differential network to the input of an amplifier. The amplified error signal between transmitter 'Autosyn' B and the magnetic course setting 'Autosyn' controls operation of an induction motor connected to the output of the amplifier and drivably connected through gearing to a bar to [the] rudder for operating the rudder.

"The rotor of magnetic course setting 'Autosyn' may be rotated relative to its stator by means of a knob drivably connected to the rotor, or by radio control so that the course of the craft may be altered independently of the transmitter 'Autosyn' B. When the knob for operating the rotor of the magnetic course setting 'Autosyn' is in the position shown in Exhibit Aa, then the craft may be controlled by radio through the servometer (radio control) drivably connected to magnetic course setting 'Autosyn.' The driving connection between the radio control motor and magnetic heading 'Autosyn' is shown in Exhibit Ab. When the knob is pushed inwardly, the radio control is disengaged and the craft may be flown manually by operating the course setting 'Autosyn' as described in the present application."

In his brief, the appellant lists the specific limitations found in the controversial claims which the tribunals below held not to be disclosed by Exhibit Aa, and appellant continues therein by particularly indicating how the exhibit does, in fact, satisfy the requirements of each of the rejected claims. We have examined Exhibit Aa (as well as Exhibit I) in the light of the arguments advanced by the appellant in asserted refutation of the board's findings, but are wholly unable to agree with the appellant that the board erred in its rejection of any of the appealed claims.

In claim 1 the invention is defined as including a "displaceable means" connected to the signal generating means for

repeating the generated signal as well as "means for displacing said signal repeating means" which also generates an independent signal. The appellant takes the position that these means are found in Exhibit Aa in the "magnetic course setting autosyn" and the knob marked "push to disengage radio control." There is nothing, insofar as we can determine, to indicate that the "magnetic course setting autosyn" is a displaceable means or that it can be displaced by the knob, "push to disengage radio control." Exhibit Aa does not satisfy or support the aforegoing limitation, but on the contrary it would appear that the knob is merely for the purpose of disengaging the radio control and does not remove the "magnetic course setting autosyn" from the automatic pilot circuit. Furthermore, we can find nothing in Exhibit Aa that would indicate that when the knob is pushed to disengage the radio control it is supposed to operate to generate an independent signal to move the control surface independently of the gyro-stabilized automatic pilot circuit.

Substantially the same requirements for the invention are found in claims 2 and 3 although expressed in slightly different language such as "displaceable repeater device" and "means for displacing said repeater device." As previously indicated in our discussion of claim 1, we do not find these parts of the invention disclosed in Exhibit Aa and therefore we can find no error in the conclusion reached by the tribunals below. Similarly expressing himself with regard to the failure of the exhibit to support issue claims 1, 2, and 3, the Solicitor for the Patent Office, in his brief, stated as follows:

> "Referring first to claims 1, 2, and 3, the Examiner (and the Board) failed to find that Exhibit Aa disclosed a 'displaceable means' along with 'a means for displacing said signal repeating means' to carry out the trim function. The appellant strenuously contends that the element in Aa labeled 'Magnetic Course Setting Autosyn' embodies a 'dis-placeable' element which is adapted to be displaced by a knob, labeled 'Push to disengage radio control', to trim the aircraft.

> "It is submitted that there is nothing in Exhibit Aa or in the remainder of the record for assuming that the knob referred to would carry out any function other than that ascribed to it in the exhibit. According to the legend it has but one purpose, i. e., to disengage the radio control from the autosyn to allow control from the flux gate only.

> "The most detailed statement by the appellant to the contrary urges that it is obvious 'that when the knob is pushed to disengage radio control, the rotor of the magnetic course setting "Autosyn" is still drivably connected through gearing to the knob—'. It is the appellant's apparent intention that the purely schematic showing in Aa of mechanical connections (of undisclosed type) between the motor, knob, and Autosyn furnishes a basis for his position.

> \*    \*    \*    \*    \*    \*

> "\* \* \* Even if it be assumed that Exhibit Aa shows gearing capable of connecting the knob to the Autosyn rotor, it is clear that the disclosure was no more than accidental only. If the knob was intended to be manipulated to provide trim, it obviously would have been so labeled. Moreover, the record does not explain the function of the 'Manual Setting Radio Magnetic Course' on the left side of the drawing. It appears to be a manual trim feature (worthy of a label on the drawing) and the appellant would not provide two controls for the same purpose."

Claim 4 calls for a "gyroscopically controlled means for positioning one of the elements of a first of said generators" which appellant contends is the "gyroscopically stabilized fluxgate." It is to

be noted, however, that a gyro-stabilized fluxgate is not controlled by the gyroscope since the gyroscope is merely used to maintain the fluxgate in a given position in space. It is the movement of the fluxgate through the earth's magnetic field that generates the signal voltage and not the action of the gyroscope. As succintly stated in the brief of the solicitor, "it is apparent therefore that a 'gyroscopically stabilized flux gate' is quite different from, and does not satisfy the limitation in claim 4 to 'gyroscopically *controlled* means for positioning *one of the elements* of the first of said generators.'" (Italics quoted.) As for the "manually adjustable means for effecting relative movement of the elements of the other generator," no showing is made in Exhibit Aa that the knob, "push to disengage radio control," can be used for any purpose other than to disengage the radio control.

Claims 5, 7, 8, and 9 all call for a manually adjustable means to displace the signal repeating means and to generate an independent signal although the language varies somewhat in the respective claims. As aforesaid, however, there is absolutely nothing in Exhibit Aa to indicate that the "magnetic course setting autosyn" is displaceable or that the aforementioned knob has any other function than indicated.

Exhibit I concededly shows the same basic structure as that shown in Exhibit Aa. While claim 3 was not rejected on Van Auken, it was held to be unpatentable over Kellogg and Frische, the affidavit not being sufficient to defeat such rejection, nor support claims 2 or 4. Although somewhat repetitious, we quote with approval from the brief of the Solicitor of the Patent Office, as follows:

"It is essential to the appellant's position that the 'gyroscopically controlled means' of claim 4 finds response in the 'gyro stabilized earth inductor unit' of Exhibit I. However, an 'earth inductor unit,' like a 'flux gate,' generates a voltage *independently* of a gyroscope. * * * a gyro *stabilized* element is not gyroscopically *controlled*. Further, the appellant admits that Exhibit I includes no 'artificial horizon' and 'pitch take-off' as required by claims 2 and 3. Contrary to the appellant's position, these are essential elements, bearing a definite relationship to the other elements of the claims, and are not, therefore, 'nominal differences.'" [Italics quoted.]

We therefore conclude that all of the claims include specific limitations which are not to be found in the exhibits accompanying the affidavit. It is entirely clear that a proper showing of conception under Rule 131, supra, requires proof of the most convincing character. That proof cannot be supplied by speculative analysis tending to enlarge upon a normal and reasonable interpretation of the contents of the exhibits.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.